# UNITED STATES DISTRICT COURT
for the
**Western District of Kentucky**
**Louisville Division**

| | |
|---|---|
| Laquita Fugett )<br>    *Plaintiff* )<br> )<br>v. )<br> )<br>Amsher Collection Services Inc. )<br>    *Defendant* )<br>Serve: )<br>    Corporation Service Company )<br>    421 West Main Street )<br>    Frankfort, KY 40601 )<br> )<br>Trans Union, LLC )<br>    *Defendant* )<br>Serve: )<br>    The Prentice Hall Corp. System )<br>    421 West Main Street )<br>    Frankfort, KY 40601 )<br> )<br>Equifax Information Services, LLC )<br>    *Defendant* )<br>Serve: )<br>    Corporation Service Company )<br>    421 West Main Street )<br>    Frankfort, KY 40601 )<br> )<br>AT&T Services, Inc. )<br>    *Defendant* )<br>Serve: )<br>    CT Corporation System )<br>    306 W. Main Street )<br>    Suite 512 )<br>    Frankfort, KY 40601 )<br> )<br>Convergent Outsourcing, Inc. )<br>    *Defendant* )<br>Serve: )<br>    C T Corporation System )<br>    306 W. Main Street )<br>    Suite 512 )<br>    Frankfort, KY 40601 )<br> ) | Case No. 3:16-cv-427-GNS |

| | |
|---|---|
| Firstsource Advantage, LLC | ) |
|     *Defendant* | ) |
| Serve: | ) |
|     CT Corporation System | ) |
|     306 W. Main Street | ) |
|     Suite 512 | ) |
|     Frankfort, KY 40601 | ) |
| | ) |
| GTE Wireless, Inc. | ) |
|     *Defendant* | ) |
| Serve: | ) |
|     CT Corporation System | ) |
|     306 W. Main Street | ) |
|     Suite 512 | ) |
|     Frankfort, KY 40601 | ) |
| | ) |
| Nextel Retail Stores, LLC | ) |
| d/b/a Sprint Nextel | ) |
|     *Defendant* | ) |
| Serve: | ) |
|     Corporation Service Company | ) |
|     421 West Main Street | ) |
|     Frankfort, KY 40601 | ) |
| | ) |
| Synchrony Bank | ) |
|     *Defendant* | ) |
| Serve: | ) |
|     Synchrony Bank | ) |
|     170 West Election Road | ) |
|     Suite 125 | ) |
|     Draper, UT 84020 | ) |
| | ) |
| Time Warner Cable, Inc. | ) |
|     *Defendant* | ) |
| Serve: | ) |
|     CT Corporation System | ) |
|     306 W. Main Street | ) |
|     Suite 512 | ) |
|     Frankfort, KY 40601 | ) |
| | ) |
| Transworld Systems, Inc. | ) |
|     *Defendant* | ) |
| Serve: | ) |
|     CT Corporation System | ) |
|     306 W. Main Street | ) |
|     Suite 512 | ) |
|     Frankfort, KY 40601 | ) |
| | ) |

| | |
|---|---|
| Webbank | ) |
|     *Defendant* | ) |
| Serve: | ) |
|     Webbank | ) |
|     215 South State Street | ) |
|     Suite 1000 | ) |
|     Salt Lake City, UT 84111 | ) |
| | ) |

## COMPLAINT and DEMAND FOR JURY TRIAL

### INTRODUCTION

1. This is an action brought by Plaintiff Laquita Fugett for Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 - 1692o ("FDCPA") and/or the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").

### JURISDICTION

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, the FDCPA, 15 U.S.C. §1692k(d), and the FCRA § 1681p.

### PARTIES

3. Plaintiff Laquita Fugett is a natural person who resides in Jefferson County, Ky. Ms. Fugett is a "consumer" within the meaning of the FDCPA, as defined at 15 U.S.C. § 1692a (3); and the FCRA, as defined at 15 U.S.C. § 1681a(c).

4. Defendant Amsher Collection Services Inc. ("Amsher") is a third-party debt collector, whose principal office is located at 4524 Southlake Parkway, Suite 15, Hoover, AL 35244.

5. Amsher regularly collects or attempts to collect debts owed or due or asserted to be owed or due another, and is a "debt collector" within the meaning of the FDCPA, as defined by 15 U.S.C. § 1692a(6). Amsher is also a furnisher of information within the meaning of the FCRA and a user of consumer credit reports within the meaning of the FCRA.

6. Defendant Trans Union, LLC is a foreign limited liability company, with its principal place of business located at 555 West Adams, Chicago, IL 60661. Trans Union has registered to do business with Kentucky Secretary of State. Trans Union is a "consumer reporting agency" within the meaning of the FCRA.

7. Defendant Equifax Information Services, LLC is a foreign limited liability company, with its principal place of business located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax has registered to do business with Kentucky Secretary of State. Equifax is a "consumer reporting agency" within the meaning of the FCRA.

8. Defendant AT&T Services, Inc. ("AT&T") is a foreign corporation, with its principal office located at 208 S. Akard Street, Dallas, TX 75202. AT&T is a user of consumer credit reports within the meaning of the FCRA.

9. Defendant Convergent Outsourcing, Inc. ("Convergent") is a foreign corporation, with its principal office located at 800 SW 39th St, Renton, WA 98057. Convergent is a third-party debt collector and a user of consumer credit reports within the meaning of the FCRA.

10. Defendant Firstsource Advantage, LLC ("Firstsource") is a foreign limited liability company, with its principal office located at 205 Bryant Woods South, Amherst, NY 14228. Firstsource is a third-party debt collector and a user of consumer credit reports within the meaning of the FCRA.

11. Defendant GTE Wireless, Inc. is one of the general partners for Verizon Wireless ("Verizon") and is a foreign corporation, with its principal office located at One Verizon Way, P.O. Box 627, Basking Ridge, NJ 07920-1097. Verizon is a user of consumer credit reports within the meaning of the FCRA.

12. Defendant Nextel Retail Stores, LLC d/b/a as Sprint Nextel ("Sprint") is a foreign limited liability company, with its principal office located at 6200 Sprint Pkwy, Overland Park, KS 66251. Sprint is a user of consumer credit reports within the meaning of the FCRA.

13. Synchrony Bank ("Synchrony") is a federal association, with its headquarters located at 170 West Election Road, Suite 125, Draper, UT 84020. Synchrony is user of consumer credit reports within the meaning of the FCRA.

14. Time Warner Cable, Inc. ("TWC") is a foreign corporation, with its principal office located at 60 Columbus Circle, New York, NY 10023. TWC is a user of consumer credit reports within the meaning of the FCRA.

15. Transworld Systems, Inc. ("Transworld") is a foreign corporation, with its principal office located at 507 Prudential Road, Horsham, PA 19044. Transworld is a user of consumer credit reports within the meaning of the FCRA.

15. Webbank is a Utah bank, with its headquarters located at 215 South State Street, Suite 1000, Salt Lake City, UT 84111. Webbank is a user of consumer credit reports within the meaning of the FCRA.

### STATEMENT OF FACTS

16. Like many of her fellow Americans, the Great Recession, which began with the financial crisis in 2008, caused economic turmoil for Ms. Fugett.

17. As a result, Ms. Fugett fell behind on some of her financial obligations and defaulted on some of these.

18. Overwhelmed by a rising sea of debt, Ms. Fugett exercised her constitutional right to get a financial fresh start by filing for bankruptcy.

19. On February 13, 214, Ms. Fugett filed for Chapter 7 Bankruptcy relief in the Western District of Kentucky Bankruptcy Court, Case No. 14-30491.

20. The Bankruptcy Court issued a discharge in Mr. Fugett's bankruptcy case on May 13, 2014.

I. **Facts Relating to Amsher, Trans Union, and Equifax**

21. Ms. Fugett listed T-Mobile as one of her creditors on Schedule F of her bankruptcy petition.

22. Ms. Fugett used the T-Mobile account solely for personal, family, and household purposes, which makes the T-Mobile debt a "debt" within the meaning of the FDCPA.

23. Ms. Fugett slowly righted her economic ship.

24. As her economic conditions improved, Ms. Fugett began directed and serious efforts to improve her credit score. This process began with reviewing her credit report.

25. In reviewing her credit reports, including credit reports from Trans Union and Equifax, Ms. Fugett discovered several items that were incorrect, including negative credit information furnished by Amsher in connection with a T-Mobile debt.

26. Amsher furnished negative credit information concerning Ms. Fugett and the T-Mobile debt allegedly owed by Ms. Fugett for purposes of collecting a debt from her. *Sullivan v. Equifax, Inc.*, CIV.A. 01-4336, 2002 WL 799856 (E.D. Pa. Apr. 19, 2002) ("[R]eporting a debt to a credit reporting agency is 'a powerful tool designed, in part, to wrench compliance with payment terms.'").

27. Amsher was reporting that the T-Mobile debt was an active debt with a current balance due.

28. Because the T-Mobile debt was discharged in her bankruptcy, Mr. Fugett believed that the debt was being reported in error.

29. Ms. Fugett disputed the T-Mobile debt directly with Amsher.

30. Ms. Fugett asked for proof that the debt was hers and plainly informed Amsher that, if hers, the T-Mobile debt was discharged in her Chapter 7 Bankruptcy case.

31. Despite her requests, Amsher did not send Ms. Fugett any proof that the debt was hers. Nor did Amsher update the information it furnished to the consumer reporting agencies that the debt was discharged in Ms. Fugett's bankruptcy.

32. Ms. Fugett also repeatedly sent letters to Trans Union and Equifax disputing the T-Mobile debt as reported by Amsher, which triggered Trans Union's and Equifax's duties under 15 U.S.C. § 1681i to investigate Ms. Fugett's dispute.

33. Upon information and belief, Trans Union and Equifax each sent Amsher notice of Ms. Fugett's disputes, which thereby triggered Amsher's duty under 15 U.S.C. § 1681s-2(b) to reinvestigate the T-Mobile debt.

34. Upon information and belief, Trans Union and Equifax each failed to conduct a reasonable investigation into Ms. Fugett's dispute concerning the negative credit information concerning Ms. Fugett and the alleged T-Mobile debt that as furnished by Amsher.

35. Upon information and belief, Amsher failed to conduct a reasonable investigation into Ms. Fugett's dispute concerning the negative credit information concerning Ms. Fugett and the alleged Amsher debt that Amsher is furnishing to one or more consumer reporting agencies.

36. Upon information and belief, Amsher falsely verified the accuracy of the disputed negative credit information to one or more consumer reporting agencies.

37. On May 7, 2015, Amsher requested a copy of Ms. Fugett's consumer credit report from Trans Union ostensibly for purposes of account review.

38. At the time that Amsher requested Ms. Fugett's consumer credit report there was no T-Mobile account to review, because the account had been discharged in Ms. Fugett's bankruptcy.

39. Consequently, Amsher did not have a permissible purpose under the FCRA for requesting Ms. Fugett's consumer credit report from Trans Union.

40. As a result of Amsher's failure to conduct a reasonable investigation of Ms. Fugett's dispute, Ms. Fugett suffered actual damages in the form of a lowered credit score, denial of credit, and expenses incurred in disputing the false and inaccurate credit information furnished by Amsher.

41. Amsher violated the FDCPA by attempting to collect a debt from Ms. Fugett that she does not in fact owe and by reporting false credit information about Ms. Fugett and the T-Mobile debt, including false information concerning the date of first delinquency.

42. Amsher violated the FCRA by failing to conduct a reasonable investigation of Ms. Fugett's dispute after receiving notice of the dispute from one or more consumer reporting agencies and by requesting Ms. Fugett's consumer credit report without a permissible purpose.

43. As a result of Trans Union's failure to conduct a reasonable investigation of Ms. Fugett's dispute, Ms. Fugett suffered actual damages in the form of a lowered credit score, denial of credit, and expenses incurred in disputing the false and inaccurate credit information furnished

by Amsher.

44. Trans Union violated the FCRA by failing to conduct a reasonable investigation of Ms. Fugett's disputes concerning Amsher and the T-Mobile debt.

45. As a result of Equifax's failure to conduct a reasonable investigation of Ms. Fugett's dispute, Ms. Fugett suffered actual damages in the form of a lowered credit score, denial of credit, and expenses incurred in disputing the false and inaccurate credit information furnished by Amsher.

46. Equifax violated the FCRA by failing to conduct a reasonable investigation of Ms. Fugett's disputes concerning Amsher and the T-Mobile debt.

## II. Facts Relating to the Remaining Defendants

47. In Schedule F of her Chapter 7 Bankruptcy Petition filed on February 13, 2014, Ms. Fugett included debts owed to:

- AT&T
- Firstsource
- GE Capital Retail Bank (now Synchrony)
- Verizon
- Sprint
- Transworld
- TWC/Insight
- Webbank

48. On April 9, 2014, AT&T requested and obtained Ms. Fugett's consumer credit report from Equifax.

49. At the time that AT&T requested Ms. Fugett's consumer credit report there was no AT&T account to review, because the account had been discharged in Ms. Fugett's Chapter 7 Bankruptcy.

50. Consequently, AT&T did not have a permissible purpose under the FCRA for requesting Ms. Fugett's consumer credit report from Equifax.

51. On August 7, 2015, Firstsource requested and obtained Ms. Fugett's consumer credit report from Trans Union.

52. At the time that Firstsource requested Ms. Fugett's consumer credit report there was no Firstsource account to review, because the account had been discharged in Ms. Fugett's Chapter 7 Bankruptcy.

53. Consequently, Firstsource did not have a permissible purpose under the FCRA for requesting Ms. Fugett's consumer credit report from Trans Union.

54. On May 13, 2014; May 26, 2014; June 16, 2014; October 12, 2014; February 26, 2015; and November 11, 2015, Synchrony Bank requested and obtained Ms. Fugett's consumer credit report from Experian Information Solutions, Inc. ("Experian").

55. At the multiple times that Synchrony requested Ms. Fugett's consumer credit report there was no Synchrony (or GE Capital Retail Bank) account to review, because any Synchrony or GE Capital Retail Bank account had been discharged in Ms. Fugett's Chapter 7 Bankruptcy.

56. Consequently, Synchrony did not have a permissible purpose under the FCRA for requesting Ms. Fugett's consumer credit reports from Experian.

57. On January 3, 2015, Verizon requested and obtained Ms. Fugett's consumer credit report from Equifax.

58. At the time that Verizon requested Ms. Fugett's consumer credit report there was no Verizon account to review, because the account had been discharged in Ms. Fugett's Chapter 7 Bankruptcy.

59. Consequently, Verizon did not have a permissible purpose under the FCRA for requesting Ms. Fugett's consumer credit report from Equifax.

60. On July 7, 2014, Sprint requested and obtained Ms. Fugett's consumer credit report from Equifax.

61. At the time that Sprint requested Ms. Fugett's consumer credit report there was no Sprint account to review, because the account had been discharged in Ms. Fugett's Chapter 7 Bankruptcy.

62. Consequently, Sprint did not have a permissible purpose under the FCRA for requesting Ms. Fugett's consumer credit report from Equifax.

63. On May 8, 2015, Transworld requested and obtained Ms. Fugett's consumer credit report from Trans Union.

64. At the time that Transworld requested Ms. Fugett's consumer credit report there was no Transworld account to review, because the account had been discharged in Ms. Fugett's Chapter 7 Bankruptcy.

65. Consequently, Transworld did not have a permissible purpose under the FCRA for requesting Ms. Fugett's consumer credit report from Trans Union.

66. On June 25, 2015, TWC requested and obtained Ms. Fugett's consumer credit report from Experian.

67. At the time that TWC requested Ms. Fugett's consumer credit report there was no TWC account to review, because the account had been discharged in Ms. Fugett's Chapter 7 Bankruptcy.

68. Consequently, TWC did not have a permissible purpose under the FCRA for requesting Ms. Fugett's consumer credit report from Experian.

69. On July 13, 2015 and July 16, 2014, Webbank requested and obtained Ms. Fugett's consumer credit report from Trans Union.

70. At the time that Webbank requested Ms. Fugett's consumer credit report there was no Webbank account to review, because the account had been discharged in Ms. Fugett's Chapter 7 Bankruptcy.

71. Consequently, Webbank did not have a permissible purpose under the FCRA for requesting Ms. Fugett's consumer credit reports from Trans Union.

72. On September 15, 2014; November 3, 2014; and February 25, 2015, Convergent requested and obtained Ms. Fugett's consumer credit report from Experian.

73. Ms. Fugett does not have an account with Convergent.

74. Ms. Fugett knows of no account or debt that Convergent has been assigned to collect from her.

75. Upon information and belief, any debt that a creditor may have assigned to Convergent for collection from her was discharged in Ms. Fugett's Chapter 7 Bankruptcy.

76. Consequently, Convergent did not have a permissible purpose under the FCRA for requesting her consumer credit reports from Experian.

77. Ms. Fugett's consumer credit report is replete with sensitive personal information. The unauthorized release of Ms. Fugett's consumer credit report to AT&T, Firstsource, Synchrony, Verizon, Sprint, Transworld, TWC, Webbank, and Convergent was highly offensive to Ms. Fugett, as it would be to any other reasonable person.

78. AT&T, Firstsource, Synchrony, Verizon, Sprint, Transworld, TWC, Webbank, and Convergent each violated the FCRA by requesting and obtaining Ms. Fugett's consumer credit report(s) without a permissible purpose.

# CLAIMS FOR RELIEF

I.     Claims against Amsher Collection Services Inc.

    A.     Violation of the FDCPA

79.     The foregoing acts and omissions of Amsher violate the FDCPA, including 15 U.S.C. § 1692e and 15 U.S.C. § 1692f and one or more subsections of each statute.

    B.     Violations of the FCRA

80.     The foregoing acts and omissions of Amsher violate the FCRA.

        i.     Violations of 15 U.S.C. § 1681n

81.     After being informed by Equifax, Experian, and/or Trans Union that Ms. Fugett disputed the accuracy of the information it was providing concerning Ms. Fugett and the T-Mobile debt, Amsher willfully failed to conduct a proper investigation of Ms. Fugett's disputes, filed with Equifax, Experian, and/or Trans Union, that Amsher was furnishing false negative credit information about Ms. Fugett and the T-Mobile debt, which Ms. Fugett did not owe because the debt was discharged in Ms. Fugett's Chapter 7 Bankruptcy.

82.     Amsher willfully failed to review all relevant information purportedly provided by Equifax, Experian, and/or Trans Union to Amsher in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

83.     Amsher willfully failed to direct Equifax, Experian, and/or Trans Union to delete inaccurate information about Ms. Fugett pertaining to the T-Mobile debt as required by 15 U.S.C. § 1681s-2(b)(C).

84.     Ms. Fugett has a private right of action to assert claims against Amsher and Midland arising under 15 U.S.C. § 1681s-2(b).

85.     Amsher is liable to Ms. Fugett for the actual damages she has sustained by reason of their violations of the FCRA, in an amount to be determined by the trier of fact, or up to $1,000.00 in statutory damages whichever is greater, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees, and she may recover therefore pursuant to 15 U.S.C. § 1681n.

        ii.     Violation of 15 U.S.C. § 1681o

86.     After being informed by Equifax, Experian, and/or Trans Union that Ms. Fugett disputed the accuracy of the information it was providing concerning Ms. Fugett and the T-Mobile debt, Amsher and/or negligently failed to conduct a proper investigation of Ms. Fugett's disputes, filed with Equifax, Experian, and/or Trans Union, that Amsher was furnishing false negative credit information about Ms. Fugett and the T-Mobile debt, which Ms. Fugett did not owe because the

debt was discharged in Ms. Fugett's Chapter 7 Bankruptcy.

87. Amsher negligently failed to review all relevant information purportedly provided by Equifax, Experian, and/or Trans Union to Amsher in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

88. Amsher negligently failed to direct Equifax, Experian, and/or Trans Union to delete inaccurate information about Ms. Fugett pertaining to the T-Mobile debt as required by 15 U.S.C. § 1681s-2(b)(C).

89. Ms. Fugett has a private right of action to assert claims against Amsher arising under 15 U.S.C. § 1681s-2(b).

90. Amsher is liable to Ms. Fugett for the actual damages she has sustained by reason of its violation of the FCRA, in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees, and she may recover therefore pursuant to 15 U.S.C. § 1681o.

C. **Violation of 15 U.S.C. § 1681b(f)**

91. Amsher requested and obtained Ms. Fugett's consumer credit report for a purpose not permitted under 15 U.S.C. § 1681b.

92. Ms. Fugett is entitled to recover her actual damages or $1,000.00, whichever is greater, under 15 U.S.C. § 1681n(b), plus her reasonable attorney's fees and costs for Amsher's requesting and obtaining her consumer credit report without a permissible purpose.

II. **Claims against Trans Union, LLC**

93. The foregoing acts and omissions by Trans Union, LLC violate the FCRA.

94. Trans Union violated 15 U.S.C. § 1681i by failing to conduct a proper investigation of Ms. Fugett's disputes that Amsher was furnishing false negative credit information about Ms. Fugett and the T-Mobile debt, which Ms. Fugett did not owe because the debt was discharged in Ms. Fugett's Chapter 7 Bankruptcy.

95. Trans Union failed to review all relevant information purportedly provided by Ms. Fugett in conducting its investigation, as required by 15 U.S.C. § 1681i(a)(4).

96. Trans Union failed to delete inaccurate information about Ms. Fugett pertaining to the T-Mobile debt as required by 15 U.S.C. § 1681i(a)(5).

97. Trans Union's conduct, actions and inactions were willful, rendering Trans Union liable under 15 U.S.C. § 1681n for actual, statutory, and punitive damages, along with attorney's fees and costs.

98. In the alternative, Trans Union's conduct, actions and inactions were grossly negligent or negligent rendering Trans Union liable under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

### III. Claims against Equifax Information Services, LLC

99. The foregoing acts and omissions by Equifax Information Services, LLC violate the FCRA.

100. Equifax violated 15 U.S.C. § 1681i by failing to conduct a proper investigation of Ms. Fugett's disputes that Amsher was furnishing false negative credit information about Ms. Fugett and the T-Mobile debt, which Ms. Fugett did not owe because the debt was discharged in Ms. Fugett's Chapter 7 Bankruptcy.

101. Equifax failed to review all relevant information purportedly provided by Ms. Fugett in conducting its investigation, as required by 15 U.S.C. § 1681i(a)(4).

102. Equifax failed to delete inaccurate information about Ms. Fugett pertaining to the T-Mobile debt as required by 15 U.S.C. § 1681i(a)(5).

103. Equifax's conduct, actions and inactions were willful, rendering Equifax liable under 15 U.S.C. § 1681n for actual, statutory, and punitive damages, along with attorney's fees and costs.

104. In the alternative, Equifax's conduct, actions and inactions were grossly negligent or negligent rendering Equifax liable under 15 U.S.C. § 1681o for actual damages, along with attorney's fees and costs.

### IV. Claims against AT&T Services, Inc.; Convergent Outsourcing, Inc.; Firstsource Advantage, LLC; GTE Wireless, Inc.; Nextel Retail Stores, LLC; Synchrony Bank; Time Warner Cable, Inc.; Transworld System, Inc.; and Webbank

105. AT&T Services, Inc.; Convergent Outsourcing, Inc.; Firstsource Advantage, LLC; GTE Wireless, Inc.; Nextel Retail Stores, LLC; Synchrony Bank; Time Warner Cable, Inc.; Transworld System, Inc.; and Webbank each requested and obtained Ms. Fugett's consumer credit report for a purpose not permitted under 15 U.S.C. § 1681b.

106. Ms. Fugett is entitled to recover her actual damages or $1,000.00, whichever is greater, under 15 U.S.C. § 1681n(b), from AT&T Services, Inc.; Convergent Outsourcing, Inc.; Firstsource Advantage, LLC; GTE Wireless, Inc.; Nextel Retail Stores, LLC; Synchrony Bank; Time Warner Cable, Inc.; Transworld System, Inc.; and Webbank for each impermissible request for her credit report mad by each of these defendants, plus her reasonable attorney's fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Laquita Fugett requests that the Court grant her the following relief:

1. Award Plaintiffs maximum statutory damages against each Defendant;

2. Award Plaintiffs actual damages against each Defendant;

3. Award Plaintiffs punitive damages against each Defendant;

4. Award Plaintiff reasonable attorney's fees and costs;

5. A trial by jury; and

6. Such other relief as may be just and proper.

Respectfully submitted,

/s/ James H. Lawson
**James H. Lawson**
*Lawson at Law, PLLC*
115 S. Sherrin Avenue
Suite 4
Louisville, KY 40207
Tel:   (502) 473-6525
Fax:   (502) 473-6561
james@kyconsumerlaw.com
*Counsel for Plaintiff*

James R. McKenzie
*James R. McKenzie Attorney, PLLC*
115 S. Sherrin Avenue, Suite 4
Louisville, KY 40207
Tel: (502) 371-2179
Fax: (502) 257-7309
E-mail: jmckenzie@jmckenzielaw.com
*Counsel for Plaintiff*